■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY THEODIS, Appellant.—Judgment, Supreme Court, Bronx County (Robert G. Seewald, J.), rendered November 12, 1987, convicting defendant of criminal possession of a weapon in the

third degree and bail jumping in the second degree and sentencing him to concurrent indeterminate terms of imprisonment of from 2½ to 5 years and 1½ to 3 years, respectively, unanimously modified, on the law, to reverse the conviction of criminal possession of a weapon in the third degree under indictment No. 5597/86, grant the motion to suppress, dismiss said indictment, and, except as thus modified, affirmed.

Defendant was arrested a week after a shooting at the corner of Bryant and Lafayette Avenues in The Bronx. A police officer, who had earlier been given a description of the perpetrators as three black Jamaican males, one of whom might have dreadlocks, observed a car in which defendant was a rear seat passenger, and which matched the description (white, late model) of a car being sought in the investigation. Three "male blacks, mid-twenties or late twenties", one of whom had dreadlocks, were sitting in the car. When the driver's eyes made contact with the officer's, he made an illegal U-turn and sped away. Following a brief chase, the car was stopped and its three occupants exited after being ordered to do so by the officers. During the chase, one of the officers observed the rear passenger bending down as if to empty his pockets and the front passenger leaning forward. After stopping, the front passenger continued to make movements toward a blue bag between his feet, causing an officer to yell "leave the bag alone". After the three occupants had been removed from the car, one of the officers reached into the bag, which remained on the front floor of the car, and recovered a semiautomatic pistol and ammunition clip. After the occupants were arrested, a postarrest search of defendant at the precinct produced a .38 calibre revolver.

The Court of Appeals, in *People v Torres* (74 NY2d 224), held that under the New York State Constitution police, absent probable cause, may not, after they have satisfied themselves through a frisk that there was no immediate threat to their safety, intrude within the passenger compartment of a suspect's vehicle solely on the theory that if the suspect is not placed under arrest, he will be permitted to reenter his automobile and have access to any weapons inside. Although defendant did not move on State constitutional grounds, the motion to suppress submitted by one of the codefendants was grounded on, *inter alia,* "New York State Constitutional grounds, Article One, Section Twelve." Subsequently, this argument was adopted by defendant. Thus, contrary to the People's position, the argument now asserted is preserved.

In *Torres (supra)* the police had received an anonymous tip that an individual wanted for homicide could be found at a barber shop. The tip included the suspect's sex, ethnicity, large size, specific clothing, nickname, location, that he was carrying a gun in a shoulder bag and the make, color and model of the car he was using. The police saw the defendant, carrying a shoulder bag, enter a car, and approached with guns drawn. They ordered him and his companion from the car, frisked them, and reached into the car and took defendant's shoulder bag from it. Because of its unusual weight, the detective felt the outside of the bag, discerned the shape of a gun, unzipped it, and discovered a revolver and several rounds of live ammunition. The Court of Appeals reversed the denial of the suppression motion, holding that the police had, at most, only a reasonable basis for *"suspecting"* the presence of a gun, and that, absent probable cause or an immediate threat to their safety, they could not search a closed container within the passenger compartment for a weapon.

Although the differences between *Torres (supra)* and this case are significant, we do not believe that the search here can be sustained. In *Torres,* the defendant had not acted suspiciously, and although the anonymous tip had been confirmed in many respects and by defendant's presence at the barber shop, nothing he did subsequently gave the police grounds to search his bag. In this case, the occupants of the car reacted suspiciously immediately after seeing the police observe them. After making an illegal U-turn, they sped away. During the chase, such as it was, the occupants were observed acting furtively, apparently concealing something under the seat or in the bag on the floor. Indeed, after the stop, one of the occupants was still making movements toward the bag. Thus, the police had an independent and reasonable basis to be concerned about the bag. Once, however, the occupants were removed from the car and the officers secured, at least from the contents of the bag, more was needed to justify a search of any container within the passenger compartment of the car. Nor do we believe that the failure to conduct a frisk of the car's occupants prior to the search of the bag, as was done in *Torres,* changes the analysis.

The illegal search of the bag within the car's passenger compartment led to the discovery of a weapon, which was the basis for defendant's arrest, the subsequent search of his person and discovery of the gun for which he was charged. Since the gun recovered from defendant's person was the fruit of an illegal search and seizure, it must be suppressed and

indictment No 5597/86 dismissed. We affirm that part of the judgment by which defendant was convicted of bail jumping in the second degree and sentenced to 1½ to 3 years under a separate indictment. According to his brief on appeal, defendant is "not challenging the bail jumping plea or sentence." Concur—Sullivan, J. P., Carro, Milonas and Smith, JJ.